IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIADNA RAMON BARO, | |
| Plaintiff, | No. 20-cv-02126 |
| v. | Judge John F. Kness |
| LAKE COUNTY FEDERATION OF TEACHERS LOCAL 504, IFT-AFT/AFL-CIO and WAUKEGAN COMMUNITY UNIT SCHOOL DISTRICT #60, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

On August 20, 2019, Plaintiff Ariadna Ramon Baro, a public-school English teacher, signed a membership agreement to join a teacher's union under the mistaken belief that such membership was required. Under the terms of that agreement, Plaintiff authorized the union to deduct annual membership dues from her salary. When Plaintiff realized her mistake—that union membership and paying union dues were not, in fact, required—Plaintiff attempted to resign her membership and revoke her dues authorization. On September 13, 2019, Plaintiff received an email from the union asserting that "you will pay union dues regardless of whether or not you are a member," which Plaintiff interpreted to mean that her request to resign was effectively denied. In January 2020, the school began to deduct dues from Plaintiff's salary on the union's behalf.

On April 3, 2020, Plaintiff filed a § 1983 claim against her employer and the Union for violating her First Amendment rights under *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, — U.S. —, 138 S. Ct. 2448 (2018). On April 10, 2020, the Union sent Plaintiff a formal acknowledgment of her resignation, assurance that dues would no longer be deducted from her earnings, and a check for a full refund of the dues, plus five hundred additional dollars to compensate Plaintiff for her troubles. Plaintiff refused to accept the check and instead amended her complaint to add a claim for punitive damages.

Now before the Court are Defendants' fully briefed motions to dismiss. As explained below, Plaintiff's voluntary choice to join her school's local union—even if ill-informed—means that Plaintiff is bound by the terms of the union membership agreement and thus cannot show that the deduction of dues from her paycheck violated the First Amendment. Accordingly, Defendants' motions are granted, and the case is dismissed.

**I.   BACKGROUND**

Plaintiff Ariadna Ramon Baro, a citizen of Spain, relocated to Waukegan, Illinois in 2019 to begin work as an English-as-a-second-language teacher for high school students in the Waukegan Community Unit School District #60 (the "District"). (First Amended Complaint ("FAC"), Dkt. 7 ¶ 10.) On August 20, 2019, Plaintiff attended an orientation meeting at which a representative of Defendant Lake County Federation of Teachers, Local 504, IFT-AFT/AFL-CIO (the "Union") presented information about the teachers' union. (*Id.* ¶ 11.) Believing that

2

membership in the Union was required, Plaintiff filled out the union membership card and returned it to the representative. (*Id.*) Under the terms of that union membership agreement, Plaintiff agreed to authorize the Union "to deduct from [Plaintiff's] earnings on a regular pro rata basis . . . [a]n amount equal to the current annual membership dues as certified by [the Union] . . . for a period of one year[.]" (FAC, Exh. A.)

A few days later, Plaintiff "learned that union membership and paying the union was, in fact, not required," contrary to her prior belief. (*Id.* ¶ 12.) She then sent letters to both the District and the Illinois Federation of Teachers (the Union's affiliated entity) resigning her membership. (*Id.* ¶ 13.) In those letters, Plaintiff declared that her earlier dues-deduction authorization "was signed under a framework *Janus* declared unconstitutional." (*Id.*, Exhs. B & C.) On September 13, 2019, Plaintiff received an unrelated email from "Mr. Weber," a fellow teacher and a union representative, stating that "you will pay union dues regardless of whether or not you are a member." (*Id.* ¶ 14.) This statement, Plaintiff admits, was not true. (*Id.* ¶ 14.) But Plaintiff believed at the time that this emailed statement "meant that her request to resign was effectively denied." (*Id.* ¶ 15.)

In January 2020, the District began deducting Union dues from Plaintiff's paycheck and remitting them to the Union. (*Id.* ¶ 16.) On February 3, 2020, Plaintiff again contacted her Union representative and the District's payroll department to explain that she wanted to resign her membership and stop paying dues. (*Id.* ¶ 17.) But the payroll department told her that it could not stop deducting the dues and

that she would have to speak to her Union representative. (*Id.*) The Union president then contacted Plaintiff and explained that she would have to wait until the withdrawal period in August 2020 to resign her membership and stop the deduction of dues. (*Id.*)

Plaintiff filed her first complaint in this case on April 3, 2020, under 42 U.S.C. § 1983 and 28 U.S.C. § 2201(a) against Defendants for violating her First Amendment rights by allegedly withholding Plaintiff's dues without Plaintiff's consent. (*Id.* ¶ 18; Dkt. 1.) Specifically, Plaintiff sought various declarations regarding Defendant's violation of Plaintiff's First Amendment rights under *Janus*, an injunction barring the further deduction of her Union dues, damages in the form of all dues collected from her, and costs and fees under 42 U.S.C. § 1988. (*See* Dkt. 1.) On April 15, 2020, Plaintiff received a letter from the Union acknowledging her resignation and explaining that dues would no longer be deducted. (FAC ¶ 18.) The letter included a check for $829.30, which represented "a full refund of all [Plaintiff's] dues plus an additional five hundred dollars for your efforts in pursuing this matter." (*Id.* ¶ 18, Exh. F.) Plaintiff returned the check (*id.* ¶ 20) and filed an amended complaint on April 24, 2020 that added a claim for punitive damages (*See* FAC). Now before the Court are Defendants' fully briefed motions to dismiss. (Dkts. 20, 22.) For the reasons discussed below, Defendants' motions to dismiss are granted.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

4

*of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Those allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (internal quotation omitted). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

### III. DISCUSSION

Defendants contend that Plaintiff's complaint must be dismissed under both 12(b)(6) and 12(b)(1). (Dkts. 21, 22.) Defendants first argue that Plaintiff's claim does not implicate the First Amendment because Plaintiff voluntarily entered into a private agreement with Defendants. (Dkt. 21 at 5–7; Dkt. 22 at 1–2.) Defendants also contend that their tender to Plaintiff, made after Plaintiff brought this action, eliminated any case or controversy between the parties. (Dkt. 21 at 9–14; Dkt. 22 at 2–3.) As matter of jurisdiction, the Court first addresses the issue of mootness.

#### A. Plaintiff's case is not moot

If a case becomes moot at any point during the proceedings, it is "no longer a

5

Case or Controversy for purposes of Article III and is outside the jurisdiction of the federal courts." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 570 (7th Cir. 2021). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The party asserting mootness bears a "heavy burden of proof" in demonstrating it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Found., Inc. v. Concord Comm. Schs.*, 885 F.3d 1038, 1051 (7th Cir. 2018). The proper test for mootness is "whether it is still possible to fashion some form of meaningful relief to the [Plaintiff] in the event [she] prevails on the merits." *Holder v. Ill. Dept. of Corrs.*, 751 F.3d 486, 498 (7th Cir. 2014). To answer this question, the Court must determine whether Plaintiff remains injured and what relief Plaintiff requests.

At the crux of Plaintiff's alleged injury is a constitutional deprivation; namely, that Defendants violated Plaintiff's First Amendment rights under *Janus* by withholding union dues from Plaintiff's pay. To remedy this, Plaintiff requests: (1) a declaration that the union membership card she signed did not waive her First Amendment rights under *Janus* and that Defendants' actions thereby violated Plaintiff's constitutional rights; (2) actual damages for all union dues collected from her; (3) punitive damages against the Union; and (4) costs and attorneys' fees. (FAC at 8–9.) After Plaintiff filed this case, but before she filed the operative complaint, the District ceased withholding union dues from Plaintiff's paycheck and remitting them

6

to the Union, and the Union voluntarily attempted to fully refund garnished dues plus a $500 check for Plaintiff's "efforts in pursuing this matter." (*Id.* ¶¶ 18–19, Exh. F.) Plaintiff returned the check, (*id.* ¶ 20) and filed an amended complaint with an added claim for punitive damages.

As a general rule, an unaccepted settlement offer does not render a case moot. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016). And the Seventh Circuit has overruled a number of its decisions to the extent they hold that "a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy." *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015).[1] *Chapman* went so far as to suggest that "[e]ven a defendant's proof that the plaintiff has *accepted* full compensation . . . is an affirmative defense rather than a jurisdictional bar." *Id.* Under *Chapman*, Defendant's attempted reimbursement cannot create a jurisdictional bar to Plaintiff's claim for damages. As a result, Plaintiff's claim for monetary relief is not moot. For the same reason, Plaintiff's requested declaratory relief under 28 U.S.C. § 2201 also survives a Rule 12(b)(1) challenge. *See NewPage Wis. Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 651 F.3d 775, 776 (7th Cir. 2011) ("Declaratory judgment actions are authorized as long as there is an actual controversy between the two parties").

---

[1] *Chapman* explained that "[i]f an offer to satisfy all of the plaintiff's demands really moots a case, then it self-destructs. Rule 68 is captioned 'Offer of Judgment.' But a district court cannot enter judgment in a moot case. . . . So if [Defendant tendered an offer that] made this case moot, even if [Plaintiff] had accepted it the district court could not have ordered [Defendant] to pay." *Chapman*, 796 F.3d at 786.

7

Without regard to whether any prospective injunction would provide meaningful relief to Plaintiff,[2] Plaintiff's claims for damages and declaratory relief satisfy the "Article III minima of injury-in-fact" to maintain "requisite standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982). It is well established that "even the availability of a 'partial remedy' is 'sufficient to prevent [a] case from being moot.'" *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (quoting *Church of Scientology of Cal. V. United States*, 506 U.S. 9, 13 (1992)). Thus, so long as Plaintiff has some available remedy—even if not "fully satisfactory"—Plaintiff's case is not moot. *Id.*

In view of *Chapman*, Plaintiff's claim for monetary damages and declaratory relief are not rendered moot by Defendant's voluntary attempts to provide a remedy. Because a case or controversy exists, the Court retains its jurisdiction under Article III and can proceed to address Defendants' motion to dismiss under Rule 12(b)(6).

---

[2] Before Plaintiff filed her operative complaint, the Union had already ceased the challenged conduct: the Union acknowledged Plaintiff's request to become a nonmember and ceased deducting dues from her paycheck. (FAC, Exh. F.) Although a defendant's voluntary cessation of challenge conduct "does not necessarily render a case moot," if a defendant "sincerely self-corrects the practice at issue, a court will give this effort weight in its mootness determination." *Freedom From Religion Found.*, 885 F.3d at 1051 (citing *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004)). Even viewed in the light most favorable to Plaintiff, the complaint does not suggest the Union's conduct is reasonably expected to recur. Plaintiff admits that the statement she received—that she would have to "pay union dues regardless of whether or not [she became] a member"—"was not true." (Dkt. 7 ¶ 14.) For its part, the Union disavows its "legally inaccurate" statement in the letter as a "misstatement." (Dkt. 21 at 7.) Plaintiff further concedes that she "might not ever face the unconstitutional conduct alleged in her complaint again given [the Union's] voluntary cessation," and that the Union's conduct "may make [Plaintiff's] requested injunctive relief . . . moot." (Dkt. 27 at 9.) Although the pleadings create no reason to believe that Defendant could "resurrect the older procedure in the future," *Boyd v. Adams*, 513 F.2d 83, 89 (7th Cir. 1975), Plaintiff, for the reasons identified in this opinion, maintains justiciable claims for damages and declaratory relief. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

### B.   Plaintiff's complaint does not implicate the First Amendment

In 2018, the Supreme Court held that "[n]either an agency fee for any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, *unless the employee affirmatively consents to pay*. By agreeing to pay, *nonmembers* are waiving their First Amendment rights, and such a waiver cannot be presumed." *Janus*, 138 S. Ct. at 2486 (emphasis added). But "*Janus* said nothing about union members who . . . freely chose to join a union and voluntarily authorized the deduction of union dues, and who thus consented to subsidizing a union." *Bennett v. Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 991 F.3d 724, 732 (7th Cir. 2021).

*Janus* held that the First Amendment prohibits unions from forcing compulsory payroll deductions—*i.e.*, "fair share" fees—from workers who are not union members. *Janus*, 138 S. Ct. at 2486. In *Janus*, the plaintiff was not a member of the union, but the collective bargaining agreement nevertheless required him to pay agency fees to the union, which in turn spent that money in part on lobbying and advertising on behalf of the union. *Id.* As the Supreme Court explained, compelling nonmembers to subsidize the activities of a public sector union by automatically deducting fair-share fees runs afoul of the First Amendment absent an employee's affirmative consent and waiver of such right as shown by "clear and compelling evidence." *Id.*

Plaintiff's claim presupposes that the Supreme Court's decision in *Janus* established a First Amendment right for all public employees—including union

9

members—not to subsidize a union by means of deduction of union dues without first affirmatively consenting to waive that right. But the Seventh Circuit expressly rejected that reading of *Janus* in *Bennett v. AFSCME Council* 31, joining instead "a swelling chorus of courts" that have held *Janus* does not, as a matter of law, require a constitutional waiver before union dues are deducted from employees who have chosen to join a public sector union. *Bennett*, 991 F.3d at 730–31.

As here, the plaintiff in *Bennett* signed a union membership card and later asserted that the *Janus* decision voided her dues-deduction authorization. *Id.* at 730. But the Seventh Circuit held that the union and school district did not violate the plaintiff's First Amendment rights by continuing to deduct union dues from her paychecks *after* she revoked her union membership, explaining that the signing of a union membership card authorized the deduction of union dues "in the context of a contractual relationship" and that "[t]he First Amendment does not confer a constitutional right to disregard promises that would otherwise be enforced under state law." *Id.* at 731 (cleaned up).

*Bennett* fatally undermines Plaintiff's claim that her "*Janus* rights" were violated by Defendants' conduct. Indeed, Plaintiff's own allegations establish that she signed the union membership agreement voluntarily, meaning that she is bound by the contract she entered. *See Troesch v. Chi. Tchrs. Union, Loc. Union No.1, Am. Fed'n of Tchrs.*, 522 F. Supp. 425, 431 (N.D. Ill. 2021) (dismissing complaint for failure to state a *Janus* claim), *aff'd*, No. 21-1525, 2021 WL 2587783 (7th Cir. Apr. 15, 2021), *cert. denied sub nom. Troesch v. Chi. Tchrs. Union*, 142 S. Ct. 425 (2021). Although

10

the Court need look no further than *Janus* and *Bennett* to dispose of Plaintiff's First Amendment claim, an exploration of the record is necessary to demonstrate why Plaintiff's claim fails.

### 1. *Plaintiff Voluntarily Joined the Union*

It is undisputed that Plaintiff signed the union membership agreement and that such membership was not a condition of Plaintiff's employment. (*See* FAC ¶ 11–12.) By its terms, the membership card was required to "authorize" the deduction of union dues and to "apply to be a member" in the union. (*Id.*, Exh. A.) Union membership was thus on an opt-in basis, not opt-out. (*Id.* ("I hereby apply to be a member"; "I hereby authorize . . . the [union] to act as my exclusive representative with my employer[.]").)

Plaintiff now asserts that there is not "clear and convincing evidence that she provided affirmative consent to waive her right not to pay" union dues because, although she agreed to the terms of the membership agreement, Plaintiff did not specifically agree to give up her rights under *Janus* not to subsidize union speech. (*Id.* ¶ 3.) But this crabbed view finds no support in *Janus* or *Bennett*; *Janus* "said nothing about union members who, like [Plaintiff] voluntarily authorized the deduction of union dues." *Bennett*, 991 F.3d at 732.

Plaintiff does not dispute that she voluntarily signed the union membership card. (Dkt. 27 at 6 (Plaintiff "has never alleged that [the] September 13, 2019 statement caused her to involuntarily sign the union card on August 20, 2019").) Instead, Plaintiff alleges that "she filled out the union membership form" because she

11

"[b]eliev[ed] it to be required" and "was unaware of the Supreme Court's *Janus* decision." (FAC ¶ 11.) A few days later, Plaintiff says, she realized her mistake and resigned her membership "[p]er the U.S. Supreme Court's decision in Janus [*sic*]." (*Id.*, Exh. B.) Plaintiff also alleges that the unrelated communication she received from "Mr. Weber" the following month—stating that Plaintiff "will pay union dues regardless of whether or not [Plaintiff is a] member"—caused her to believe that her request to resign "was effectively denied." (*Id.* ¶ 15.)

Although Plaintiff admits that the substance Weber's email "was not true"—Plaintiff concedes Defendants do not deduct union dues from nonmembers—Plaintiff maintains that she "did not know it was not true" at the time. (FAC ¶ 14.) This assertion is difficult to square with Plaintiff's Exhibits B and C, which reflect, in detail, Plaintiff's apparent certitude—two weeks before she received the Weber email—that she was *not* obligated to remain a union member or to pay dues as a nonmember:

> **Effective immediately, I resign my membership from the Union and all affiliated unions and wish to be considered a nonmember.**
>
> Per the U.S. Supreme Court's decision in Janus v. AFSCME, I cannot be required to pay any dues or fees to a union to maintain my job.
>
> **Therefore, neither the Union nor my Employer is authorized to enforce any authorization** I previously gave or may be perceived to have given pursuant to a signed authorization form, or any authorization that Employer has inferred on my behalf, allowing Employer to make an automatic payroll deduction for Union dues or fees.
>
> **Furthermore, any restriction on the timing of revoking a dues/fees deduction is invalid because any previous**

12

> **authorization was signed under a framework Janus declared unconstitutional.**
>
> If you refuse to accept this letter as both an effective resignation and my immediate revocation of the automatic dues or fees deduction, please inform me immediately, in writing, of exactly what must be done to revoke my automatic dues or fees deduction authorization and resign my membership in the Union.
>
> Please respond promptly. Any further collection of dues or fees will constitute a violation of my rights under the U.S. Constitution.

(*Id.*, Exhs. B & C.)

Plaintiff's assertion that she thought her resignation was rejected is also belied by Plaintiff's allegation that, on February 3, 2020, she "again contacted her union representative and the payroll department of the District"—the details are sketchy—"and explained that she wanted to resign her membership and stop paying dues." (*Id.* ¶ 17.) If Plaintiff truly believed that her earlier resignation request was *de facto* denied by the Weber email, it is odd that Plaintiff chose to reiterate that previously-ineffective request.

These discrepancies may be immaterial, however, because the Court is bound to accept Plaintiff's factual allegations as true and to draw all reasonable inferences in Plaintiff's favor. *See Iqbal*, 556 U.S. at 678. Doing just that, the Court understands the essence of Plaintiff's narrative to be as follows:

- ➢ Plaintiff signed a union membership application form on August 20, 2019, authorizing the Union to deduct dues from Plaintiff's earning "for a period of one year from the date of authorization." (FAC, Exh. A.)
- ➢ At the time she signed the form, Plaintiff did not know that joining the union was optional. (*Id.* ¶ 11.)
- ➢ On August 30, 2019, Plaintiff sent detailed letters to Defendants attempting to void her previously given authorization because "any

13

previous authorization was signed under a framework *Janus* declared unconstitutional." (*Id.*, Exhs. B & C.)

➢ On September 13, 2019, Weber, a union representative, responded "you will pay union dues regardless whether or not you are a member" to a group email that happened to include Plaintiff as a recipient. (*Id.*, Exh. D.) Plaintiff interpreted the email to mean that her request to resign was denied. (*Id.* ¶ 15.)

➢ The District began deducting dues from Plaintiff's paycheck in January 2020. (*Id.* ¶ 16.)

➢ Plaintiff sent another letter to Defendants in February 2020 "explain[ing] that she wanted to resign her membership and stop paying dues." (*Id.* ¶ 17.)

➢ In response, the Union President explained to Plaintiff that, by signing the dues authorization card, Plaintiff "became a dues payer for at least 1 year." (*Id.*, Exh. E.)

➢ On April 10, 2020, soon after Plaintiff filed her initial complaint in this case, the Union President sent Plaintiff a letter acknowledging Plaintiff's resignation. (*Id.*, Exh. F.)

Even accepting Plaintiff's erroneous beliefs as true, Plaintiff's claim fails as a matter of law. As explained above, Plaintiff voluntarily joined the union. As for Plaintiff's suggestion that her choice is not binding because it was ill-informed, the Court is aware of no authority (including *Janus*) that imposes a duty of informed consent to apply for membership in a union. Put differently, *Janus* did not mandate the workplace equivalent of *Miranda* warnings[3] before an employee's application to join a public-sector union could be presumed valid. *See Bennett*, 991 F.3d at 732 ("The Court [in *Janus*] made clear that a union may collect dues when an 'employee affirmatively consents to pay.' ").

  2.  *Plaintiff is Contractually Bound by her Union Membership Agreement*

Plaintiff nonetheless insists that, because she "was not told that joining or

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

14

paying the Union was optional," the withholding of union dues from her paycheck violated her First Amendment rights. (Dkt. 27 at 2–5, 11.) But the Seventh Circuit has explained that *Janus* "in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement." *Bennett*, 991 F.3d at 732 (quoting *Belgau v. Inslee*, 975 F.3d 940, 952 (9th Cir. 2020)); *id.* ("one 'cannot simultaneously choose to both join the Union and not pay union dues'") (quoting *Oliver v. Serv. Emps. Int'l Union Loc.* 668 F. App'x 76, 79 n.3 (3d Cir. 2020)). Plaintiff's voluntary act of signing and submitting a union membership application card means that the concern in *Janus*—nonmembers being forced to pay union dues—is not present here. *See Belgau*, 975 F.3d at 952 (Supreme Court only "discussed constitutional waiver *because* it concluded that nonmembers' First Amendment right had been infringed"); *see also Bennett*, 991 F.3d at 732–33 ("[Plaintiff] is not a nonmember as the term was used in *Janus*. . . . [Plaintiff] does not fall within the sweep of *Janus*' waiver requirement").

By signing the application card, Plaintiff was bound to the terms of the membership agreement. As *Bennett* explained, the First Amendment does not "render unenforceable any legal obligations or restrictions that are self-imposed through a contract." *Bennett*, 991 F.3d at 731 (cleaned up). Nor does it "confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Id.* (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991)). In the time since *Bennett* was decided, many courts have recognized that "*Janus* does not articulate a path 'to escape the terms' of an agreement to pay union dues." *Troesch*,

15

522 F. Supp. at 431 (collecting cases). Plaintiff voluntarily entered into a one-year contract with the Union, which necessarily included a dues-paying obligation for one year even if Plaintiff later wanted to escape those terms. (FAC, Exh. A ("This voluntary authorization and assignment shall be irrevocable . . . for a period of one year").) Regardless of Plaintiff's back-and-forth with the union and its representatives, and regardless of the union's later decision to grant Plaintiff an early release from the agreement, Plaintiff can be held to that obligation without running afoul of *Janus* and the First Amendment. *See Bennett*, 991 F.3d at 731.

\* \* \*

In sum, Plaintiff's complaint does not raise a right to relief beyond the speculative level. *See Twombly*, 550 U.S. at 555. Plaintiff may now regret her earlier decision to join the Union, but that does not render her knowing and voluntary choice nonconsensual. Unlike the proscribed conduct by Janus' employer, the District's deductions of dues from Plaintiff's earnings were made in compliance with Plaintiff's explicit written instructions. *See Troesch*, 522 F. Supp. at 431 (dismissing complaint where "Plaintiffs do not identify 'even a whiff of compulsion' that led them to sign the [union] agreements in the first place"). In the light of Plaintiff's voluntary agreement to pay union dues, and in the absence of any legitimate claim of compulsion, Plaintiff has failed to state a First Amendment claim against Defendants.[4]

---

[4] Because Plaintiff's First Amendment claim does not implicate *Janus*, the Court need not address whether the Union is a "state actor" engaging in "state action."

16

## IV. CONCLUSION

For the reasons provided above, the Court grants Defendants' motions to dismiss (Dkt. 20, 22). Because a plaintiff who affirmatively "consented to pay dues to the union . . . does not fall within the sweep of *Janus*'s waiver requirement," *Bennett*, 991 F.3d at 733, any amendment to the complaint would be futile. Accordingly, this dismissal is with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (leave to amend need not be granted "if it is clear that any amendment would be futile").

SO ORDERED in No. 20-cv-02126.

Date: March 28, 2022

JOHN F. KNESS
United States District Judge